Carlo **ELETON**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 1, 1957.

J. Milton Luker, London, Eugene H. Clark, Manchester, for appellant.

Jo M. Ferguson, Atty. Gen., Hugh L. Hollingsworth, Asst. Atty. Gen., for appellee.

MILLIKEN, Chief Justice.

The appellant, Carlo Eleton, was convicted of voluntary manslaughter in the killing of Eugene Whitis of Clay County in June, 1955, and was sentenced to twenty-one years' imprisonment.

The badly bruised, bleeding and unconsious victim was found lying across the white center line of Highway 421, near Manchester, about 2 o'clock in the morning, and was rushed by ambulance to Lexington where he died in a few hours. Whether the deceased was run over by an automobile while walking along the highway to his home, or whether he had been beaten by the appellant and a colleague and then dragged onto the highway and left there, was what the jury had to determine. The appellant contends that he was entitled to a directed verdict of acquittal, and that certain testimony he offered to introduce was improperly excluded.

The appellant and Jesse Sams, who were about twenty-one years of age at the time, were on the way down the hollow with Midge Byrd, a young girl of fourteen, and her sister, Rosetta, who was twelve, on their way to an outdoor movie. They stopped at the home of Jesse's brother, Frankie Sams, decided against going to the movie, and Jesse went out to get his friend, Eugene Whitis. Jesse and Eugene came back with a couple of chickens, cleaned them, cooked them, and the group ate them. Jesse, Frankie and the appellant did some drinking, and Jesse told Midge he was going to rape her before the evening was over. Eugene Whitis spoke up in defense of the girls, and, at the suggestion of Mrs. Frankie Sams, offered to take the girls home. At this juncture, the appellant told Eugene, "If you go home with them you won't get out of this hollow alive tonight." Eugene, accompanied by Jesse, started out with the girls, Jesse stopped after going a short way, and Eugene went on with the girls until they were close to their home, then turned back down the hollow.

Before dawn Jesse and the appellant called at the Byrd home for Mr. Byrd, who was not there, so neither the mother nor the two girls answered. Mr. Byrd got home about 6 o'clock in the morning, after learning at a store along the highway that Eugene's battered and unconscious body had been found on the highway. About three hours after Mr. Byrd's arrival home, the appellant and Jesse came to see Midge and, out of hearing of the parents, Jesse told her what they had told Sheriff Davidson and admonished her to tell the same story. Jesse said he had told the sheriff that Eugene Whitis had "come part of the way and went back and he come home and went to bed." On his way to his home Mr. Byrd had found a belt (later identified as Eugene's) lying at the side of the roadway up the hollow from the highway. Although there was some testimony suggesting Eugene's unconscious body had the odor of alcohol, other testimony cleared him of imbibing any of the alcoholic drinks at the Frankie Sams home.

Probably the most damaging testimony offered against the appellant was that of a woman whom he drove to Middletown, Ohio, later in the summer. She said the appellant, who again had been drinking, said he had hit Eugene Whitis with an "iron piece," that Jesse and he had beat Eugene with their fists, had tied him to their car and dragged him to the highway with the intention of hiding him, became frightened and left Eugene lying in the highway.

■ It is obvious there was enough evidence of appellant's guilt to take the case to the jury and that no directed verdict of acquittal should have been given.

■ The only other ground urged for reversal is the refusal of the trial court to permit the introduction in evidence of testimony to the effect that a tape recording of a conversation between the appellant and Jesse Sams, obtained through a hidden microphone in the jail, failed to disclose any guilt on their part. In other words, it is sought to establish the appellant's innocence by the failure of the recording to disclose guilt. Although appellant and Jesse may not have known of the hidden microphone and thus their conversation be in a sense reliable, nevertheless it is equally tenable that they were saying nothing incriminating for fear of being overheard. It is one thing to admit evidence thus obtained to establish guilt and quite another thing to admit it to establish innocence. The one is a declaration against interest, an exception to the hearsay rule, and clearly trustworthy, but the other is merely a self-serving declaration whose trustworthiness is untested in any way.

The judgment is affirmed.